Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 The appeal is from the decree or order of the court confirming a survey and location of the eleven square leagues of land granted to Sutter by Governor Alvarado, on the 18th June, 1841. This grant was confirmed by the Board of
 
 *584
 
 Commissioners to Sutter, together .with twenty-two-other square leagues granted to him hy Governor Micheltorena, on the 5th February, 1845. The Board of Commissioners, in their decree, state that “ the land of which confirmation is made is situated on the American, Sacramento, and Feather Rivers, and is known as New Helvetia,” and to he located as described and explained in the depositions of John I. Vioget, filed in the cause: “ On the south by a line drawn due east from Sacramento River, so as to touch the most southerly point of a pond or laguna situated near said river, and about five miles south of the American River, as represented on the maps filed in the case, marked B. and B. P. L., exhibit to the deposition of Juan B. Alvarado, March 15,1855, which line is also marked on said map,
 
 Lindero latitud norte
 
 38° 49' 32”; on the north by a line drawn due east from the Sacramento River to the southern base of the mountains, known as the Buttes, and represented on the said map hy . the name of
 
 Los Tres Picos;
 
 and from thence until it intersects the eastern boundary of the tract, as represented on said map and described in the grant, and in the depositions of said Vioget; on the west by said river Sacramento, and on the east by the margins of the Feather River inclusive.” “ For a more particular description, reference to be had to the copies of the grants A. and C., to the map marked B., and to the depositions of John J. Vioget and Juan B. Alvarado, all of which are filed among the papers in the case.” The United States appealed from this decree to the District Court, in which considerable additional testimony was taken- on the title and boundaries; and, after argument, the court affirmed the decree of the Board of Commissioners substantially in the words of that decree. From this decree an appeal was taken to this court-, and after argument the decree of the District Court was affirmed as to the grant of eleven square leagues, and reversed as to the twenty-two granted hy Michel-torena.
 

 The mandate of this court, sent down to the District Court to be executed, recites the decree of that court
 
 in hcec verba,
 
 and then proceeds: “ On consideration whereof, it is now.
 
 *585
 
 ordered, adjudged and decreed by this court, that so much of the decree of the sakl District Court as confirms the claim of John A. Sutter to the eleven square leagues of land, situated on the American, Sacramento and Feather Divers, known by the name of New Helvetia, and which was granted to the said John A. Sutter by Governor Juan B. Alvarado,on the 18th of June, 1841, as set forth and described in said decree, be and the same is hereby affirmed,” and the residue of the decreé, in so far as it confirms the twenty-two square leagues to John A. Sutter by. Micheltorena, be' reversed, “ and that this cause be and the same is hereby remanded to the said District Court for further proceedings to be had therein in conformity to the opinion of this court.”
 

 The- first survey and location of the eleven leagues, in pursuance of the mandate, was made by A. "W.- Von Schmidt, in 1859, a deputy surveyor, under the instructions of J. "W. Mandeville, th Surveyor-General of the United States. This survey was approved by this officer February 18th, 1860, and a copy filed in the District Court the 27th of the same month, in pursuance of an order of the court. Numerous objections were taken to this survey, by various persons interested in the location of the grant, and a volume of evidence produced before the court impeaching and supporting the correctness of the same; and the court, after argument, and a very full and elaborate examination, set aside the survey, and ordered another to be made by the Surveyor-General, in conformity with the opinion expressed.
 

 This second survey was made and approved by this' officer on the 11th May, 1863, and was confirmed by the District Court on the same day. From this decree or order of confirmation the United States, and several intervenors under the act of 1860, -have appealed to this court.
 

 The mandate of this court .must be looked to for the description of the out-boundaries of the grant to Sutter, within which the eleven square leagues of land are to be located. They áre given in the mandate as derived from the calls in the grant, the map B. P. L. annexed to the deposition of
 
 *586
 
 Juan B. Alvarado, of March 15th, 1855, and the depositions of J.olm J. Yioget. Yioget was a practical engineer and surveyor, and made a survey of the eleven leagues, and also a map of the same in 1840 or 1841, and before the application by Sutter to Alvarado for the grant., and with a view to that application. The map accompanied it, and was referred to in the grant, and annexed, to it. There were two depositions of Yioget taken, together with a cross-examination as to each at a different time, which were before the Board of Commissioners, and which are referred to in its decree of' confirmation, as well as in the decree of the District Court, and in the mandate of. this court, in respect to the location of the grant. According to this survey, two square leagues were located, at the request of Sutter, south of the American Hi ver; and the remaining nine were located on each side of the Feather River, extending from what was known as the Canadian Ford on that river up the same.
 

 The survey óf'Yon Schmidt, in 1859, and which was approved by the Surveyor-General, and filed in the District Court the 27th February, 1860, was made substantially in conformity, with this survey of Yioget, the map of which is referred to in the grant by Alvarado. Yon Schmidt had with him the map B. P. L., and also A. P. L., and the depositions of Yioget; and he found no great difficulty, with these evidences before him of the former survey, in locating the two square leagues below the American River, and the nine on the margins of the Feather River, above the Canadian Ford, extending them up to the northern line, as laid down on the maps. ' The general outlines, the deputy surveyor states, as respects both parcels, were the same, and that he ran the lines so as to conform to Yioget’s survey as near as practicable. They varied some, as it was necessary to run them on subdivision lines, according to the standing instructions of the Land Department.
 

 Mr. Justice Campbell, in delivering the opinion of the court in this case,
 
 *
 
 when here before, says: “ An engineer
 
 *587
 
 and surveyor (Yioget), who prepared maps for the claimant, testifies that, in January, 1841, he made duplicate maps for ‘the claimant of tho establishment of New Helvetia-, and surveyed eleven leagues at that placó; and that in 184-3 he traced a oopy from one of these, and that copy is produced and filed with the petition. It is a fair conclusion,” ho observes, “from all the evidence, that these maps of Yioget were presented to the Governor, and form the basis of the grant, and malte part of it.” The survey here alluded to, we have seen, located two square leagues of the land south' of the American River, and the remaining nine on the Feather River. Again, speaking of the error of the lino of latitude marked on the map, lie says : “ But the map shows that the line of the southern boundary is south of New Hel-vetia, and is so related to natural objects represented on it as to be easily determined. Yioget accounts for the error in the designation of the line by the imperfection of the instruments, and proves that a starting corner ivas fixed and the line traced on the ground. This is better evidence of the true location of the southern line, and conforms to the probability of the casé. Upon the whole evidence,” he observes, “ we find that the grant and map filed with the petition in 1852, before the Board of Commissioners, have been proved.”
 

 An objection has been made, that this tract of eleven square leagues has been located in two separate parcels, two leagues below the American, and nine on the Feather River. One answer is, tha-t the original grant with the map accompanying it, thus located it, and which location, as we have seen, has been confirmed by the ’ decree of this court. In the second place, the grant was made of the tract with general out-boundaries, excluding from it lands overflown by the swelling and currents of .the rivers, in other words,
 
 tule
 
 or swamp. According to the evidence of both Yioget and Yon Schmidt, the quantity for agricultural or fast land, to lie contained in the grant, could not be obtained within the out-boundaries without making the location in two different parcels. The location, by the survey of Von Schmidt, in the
 
 *588
 
 two parcels, appears to have been made in as compact a form as was practicable,- regard being had to the condition of the grant, to the quantity of land granted, and to the charactei of the district of country or territory in which it was to be located.
 

 Without pursuing the examination of the case further, we' are satisfied that this suryey and location by Von Schmidt of the eleven square leagues of land granted to Sutter, is in conformity with the decree and mandate of this court, and should have been accepted and confirmed by the court below. We do not say that it is entirely free from objections, and from our examination of the evidence, we are satisfied that no survey or location of the tract, under the circumstances attending and surrounding the case, could be made that would be free from objection. We refer to the numerous grants made by Sutter of parcels of land, far exceeding the quantity ultimately awarded to him, which, of course, could not be covered by any location that might be made; and also to the case of pre-emption settlers, whose possessions may be included, and would be included, to a greater or less extent, by any possible location consistent with the original decree of confirmation by this court. We fully appreciate the difficulties and embarrassments that surrounded the case upon the evidence in the court below; and the opinions of the learned judge upon the various questions, as they arose, and which appear in the record, furnish abundant evidence of the labor and earnestness with which he endeavored to arrive at right and justice between all parties concerned.
 

 The survey and location, however, which we have felt constrained to adopt, we are inclined to think, will be less disturbing and prejudicial to innocent and
 
 bond fide
 
 occupants under grants from Sutter, or -on what was supposed to be public lands, than any other that could be made, from the fact that Sutter’s possessions, from his first settlement in-the country, were south of the American River, and north on the Feather River. These possessions must have been well known to purchasers under him, and also to settlers on what
 
 *589
 
 they supposed to be public lands; and in addition to this, the early .survey by Yioget, which was made the latter part of 1840, or beginning of 1841, must also have been well known to the settlers in that section of country.
 

 The decree of the court below, confirming the survey and location of the eleven square leagues to Sutter, approved by the Surveyor-General, May 11, 1863, arid filed in court the same day as recited in the said decree, and marked, “Approved, May 11,1863, Ogden Iioflman, District Judge,” must be reversed and set aside; and the survey and location of the grant by A.
 
 W.
 
 Yon Schmidt, United States Deputy Surveyor, approved by the Surveyor-General, J.
 
 W.
 
 Man-deville, February 18th, 1860, and a certified copy filed in the District Court, 27th of the same month, be substituted in its stead; and that the' case be remitted to the court below, with directions to confirm this survey as the location of the said grant.
 

 Mr. Justice FIELD- did not sit in the case, nor take part in its decision.
 

 *
 

 21 Howard, p. 176.